UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Alma Arambula Vega,<br><br>   Plaintiff,<br><br>   v.<br><br>Commissioner of Social Security,<br><br>   Defendant. | No. 1:24-cv-00360-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO REMAND FOR FURTHER PROCEEDINGS, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 17, 20)** |

### I.   Introduction

Plaintiff Alma Arambula Vega appeals a final decision of the Commissioner of Social Security denying disability insurance benefits (DIB) under Title II of the Social Security Act.[1]

### II.   Factual and Procedural Background

On September 16, 2021, Plaintiff applied for DIB alleging a disability onset date of October 27, 2020. AR 410–14. The agency denied the claim initially and on reconsideration. AR 354–58; 360–65. The ALJ held a hearing on October 24, 2022. AR 280–302. The ALJ issued an unfavorable decision on January 9, 2023. AR 44–64. The Appeals Council denied review on January 18, 2024 (AR 1–7) and this appeal followed.

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is evidence that could lead a reasonable mind to accept a conclusion.

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Doc. 7, 10.

*See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The court must consider the record as a whole and may not affirm by isolating supporting evidence. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability, 2- whether the claimant had medically determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. See, 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 27, 2020. AR 49. At step two the ALJ identified severe impairments of neurocognitive impairment and major depressive disorder. AR 50. At step three the ALJ found that no impairments or combination thereof met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 50.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded as follows:

> the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She can understand, remember, and carry out simple, routine, and repetitive tasks in a job setting that does not require high production rates, such as assembly line work, or high hourly quotas. She can have occasional interaction with co-workers and supervisors, but cannot have any contact with the public. AR 51–58.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a Head Start Supervisor (characterized by the VE as a Nursery School Attendant). AR 58. At step five, in reliance on the Vocational Expert's testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform: cleaner II, hand packager and vegetable sorter. AR 59. The ALJ therefore concluded that Plaintiff was not disabled at any time since the October 27, 2020 alleged onset date. AR 32.

### V. Issues Presented

Plaintiff asserts two claims: **1-** the mental RFC is not supported by substantial evidence because the ALJ erred in rejecting Dr. Cruz's opinion, among other reasons; and **2-** the Appeals Council wrongfully excluded new and material evidence submitted after the ALJ's decision.

#### A. Mental RFC

##### 1. Legal Standard

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The

3

RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id*

### 2. **Analysis**

Briefly by way of background, Plaintiff was born in Mexicali, Mexico, completed high school in Mexico, moved to the United States in her mid-twenties and completed her bachelor's degree at Fresno Pacific University. AR 819.

Plaintiff was 58 years old at the time of the disability application, following a 20+ year work history as a supervisor and educator for Head Start, which the VE classified as a "Nursery School Attendant," after which she began experiencing significant memory problems. AR 128.

She testified she cannot work because she can't retain information. She states she gets lost in conversations, forgets what she is doing, forgets names, forgets faces, forgets what she did the day before. AR 293. She can't remember how to put phrases together and gets anxious around people. AR 294. She loses track of time when sleeping and all she remembers is that it's daylight, and then it's night. She would sometimes miss work without remembering. Id.

On November 30, 2021, Plaintiff attended a consultative psychological examination arranged by the agency with Dr. Stephen Swanson. AR 821–22. She scored a 73 and 76 on the WMS-IV Immediate and Delayed Memory Scores which corresponded to the bottom 4th and 5th percentile. Her IQ score was 85, corresponding to the bottom 16th percentile, which is described as "low average." Id. Nevertheless, Dr. Swanson opined that these scores "do not reveal weakness in memory functioning," found no DSM-5 diagnosis and opined Plaintiff had no cognitive impairment. Id. Dr. Swanson found that, "Overall, these WAIS-IV results indicate that she can be expected to perform academically at a level that is somewhat lower than same-aged peers." AR 821. Dr. Swanson concluded that Plaintiff retained the ability to perform simple and/or complex instructions, respond to usual work situations, and maintain social relationships. Id.

The ALJ found Dr. Swanson's opinion only partially persuasive, concluding that Plaintiff's low average IQ and commensurately reduced memory function scores would be better suited for simple, routine, and repetitive tasks "which would accommodate any memory issues or concentration problems <u>caused by emotional lability</u>."[2] AR 56–57. (emphasis added). It is not clear how the ALJ concluded that Plaintiff's "emotional lability" caused her memory and/or concentration problems, rather than her memory and concentration problems caused her emotional lability. The ALJ's assumption suggests that resolving Plaintiff's emotional issues by limiting her to simple/repetitive tasks away from other people would sufficiently remedy her cognitive limitations. The ALJ identifies no support for that assumption.

The ALJ further explained as follows:

> Memory testing revealed diminished immediate and delayed memory scores; however, Dr. Swanson noted that these scores **were generally consistent with and**

---

[2] Plaintiff contends that—having rejected Dr. Swanson's opinion---"the ALJ took it upon himself to 'play doctor' using his lay knowledge to interpret <u>raw memory scaled scores</u> and make a function-by-function determination of limitation." MSJ at 5 (Doc. 17). To the contrary, "the ALJ is responsible for <u>translating and incorporating clinical findings</u> into a succinct RFC," *Rounds*, 807 F.3d at 1006 (9th Cir. 2015) (emphasis added). Further, the cognitive testing results quite literally were not "raw" medical data. They were accompanied by a percentile score, which readily facilitates lay person interpretation.

5

> **not out of proportion to the findings of the intelligence testing**. He noted that despite these lowered scores on memory testing, no specific weakness was apparent in memory functioning, given general[] intellectual functioning.

Both the ALJ and Defendant emphasize that the WMS-IV Immediate and Delayed memory scores were generally commensurate/not out of proportion with the IQ score. This emphasis suggests that although her memory is poor, it is no worse than one would expect given her low IQ. This emphasis is not persuasive. If Plaintiff scored in the bottom 1 percentile for the WMS-IV Immediate/Delayed memory testing, and the bottom 1 percentile for IQ testing, these results would certainly be commensurate with each other, but that doesn't speak to the functional implications of the test results. Thus far, it has not been shown that Plaintiff did not have significant memory problems.

Plaintiff's PCP of 19 years, Dr. Cruz, completed a check-box questionnaire opining in relevant part that Plaintiff had marked limitations in many areas of mental functioning---chiefly related to memory---and that her memory dysfunction would result in 3 unplanned absences per month and 1/3 off-task behavior. AR 989. As to supportive clinical findings, Dr. Cruz explained that Plaintiff was: "unable to remember the next day what we went over, partially helped by Namenda" (a medication for Alzheimer's/dementia). AR 989.

The ALJ found the opinion unpersuasive, explaining:

> In this check-box form . . . I note that this observed behavior in terms of memory is not wholly consistent with the results of objective psychological memory testing, which did reveal deficits, but overall supported memory functioning appropriate for an individual with low average intelligence. Moreover, as a primary care physician, Dr. Cruz's notes do not include extensive psychological examinations or testing supporting the extent of the limitations indicated in his opinion. Such opinions would also necessarily be somewhat beyond the field of his specialty, which is reinforced by his recommendations that the claimant seek specialized psychological and/or psychiatric and neurological treatment.

First, to suggest that the memory problems Dr. Cruz observed is "not wholly consistent with the results of objective psychological memory testing," is at tension with Plaintiff's score in the

4th/5th percentile on objective memory testing, as well as at tension that she couldn't remember a conversation with her doctor from a prior appointment. Those two are not in tension. Second, the ALJ again discusses "memory function appropriate for an individual with low average intelligence," which as discussed above is not persuasive.

As to the check-box nature of the form, it is true that check off reports unsupported by explanation are unpersuasive. See Kitchen v. Kijakazi, 82 F.4th 732, 740-41 (9th Cir. 2023). However, Dr. Cruz at a minimum articulated his observation that Plaintiff cannot recall what they had discussed the previous day. Although Dr. Cruz's explanation was simple and concise, that does not necessarily undermine its value. Plaintiff's inability to recall a conversation with her doctor from one day to the next appears significant, and it is more consistent with a "marked" limitation than a mild or moderate limitation. Further, the ALJ emphasized that Dr. Cruz was not a specialist. While that is true, it doesn't undermine Dr. Cruz's simple layperson observation.

Plaintiff disputes the ALJ's criticism of Dr. Cruz due to his lack of specialization. Defendant notes that specialization (or lack thereof) is indeed a factor the ALJ may consider when evaluating a medical opinion. 20 C.F.R. § 404.1520c(c).

In addition, the length of the treatment relationship is also a factor the ALJ may consider, though it is not required. Id. Here, Plaintiff's treatment relationship with Dr. Cruz spanned 19 years as noted on the first page of Dr. Cruz's opinion, which the ALJ did not acknowledge.

Finally, Plaintiff cites a number of treatment notes corroborating her memory problems. MSJ at 9 (citing AR 713, 715, 717, 728, 729). These treatment notes appear to be largely a recitation of Plaintiff's complaints to the provider, as opposed to clinical findings from the provider. Nevertheless, the complaints raised at these appointments largely mirror the complaints she articulated at the hearing which suggest she was telling a consistent story to her providers and the ALJ.

7

In sum, the ALJ's analysis in support of the mental RFC and the rejection of Dr. Cruz's opinion is unpersuasive and unsupported by substantial evidence.

### B.  Evidence Submitted to the Appeals Council

#### 1.  Applicable Law

No later than five business days before the date of the hearing, a claimant must submit all written evidence to the administrative law judge who will conduct the hearing in the claimant's case. 20 C.F.R. § 416.1435(a). The ALJ may also accept information after the five-day deadline prior to issuing the hearing decision under circumstances enumerated in 20 C.F.R. § 416.1435(b).

In limited circumstances, a claimant may submit new and material evidence to the Appeals Council that relates to the period on or before the ALJ's decision. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); 20 C.F.R. § 416.1470(a)(5). Evidence is material if it bears "directly and substantially on the matter in dispute," relates to the period on or before the date of the hearing decision, and there is a "reasonable possibility" that the new evidence would have changed the outcome. 20 C.F.R. § 416.1470; *Tudor v. Saul*, 484 F. Supp. 3d 717, 726 (N.D. Cal. 2020) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

#### 2.  Analysis

The Appeals Council explained as follows:

> You submitted medical records dated April 12, 2022 from Christina Arvizo, PsyD, QME (62 pages), medical records dated June 24, 2022 through January 11, 2023 from Harwinder Singh, M.D. (17 pages), medical records dated September 27, 2022 through November 21, 2022 from Pro-PT (42 pages), medical records dated May 9, 2023 from Perminder Bhatia, MD (4 pages), medical records dated January 14, 2021 through June 17, 2021 from Valley Metabolic Advanced Imaging (13 pages), and medical records dated December 28, 2020 through April 12, 2022 from Neuro-Pain Medical Center (81 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
> You submitted medical records dated March 5, 2023 through May 2, 2023 from California Neurological Center (9 pages) and medical records dated March 7, 2023 through April 21, 2023 from Dr. Cindy Curry (7 pages). The Administrative Law Judge decided your case through January 9, 2023. This additional evidence

8

does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 9, 2023.  AR 2.

### a. Dr. Singh's Records; Pro-Pt

The Appeals Council rejected records dated June 24, 2022 through January 11, 2023 from Harwinder Singh, M.D. (17 pages), and medical records dated September 27, 2022 through November 21, 2022 from Pro-PT (42 pages).

Plaintiff explains that those records involve chronic midback pain, associated physical examination findings, imaging findings, treatment, physical therapy, functional limitations, and statements about subjective pain levels.  MSJ at 15 (citing AR 116–21).

As Defendant explains, "Plaintiff did not previously allege during the disability claim process that she had a back impairment with related limitations; not when she initially filed for disability (AR 318, 448), not in follow-up requests regarding changes in her medical conditions (AR 333, 482, 500), not in her Function Reports (AR 436-443, 491-498), not in the pre-hearing brief (AR 524-527), and not during hearing testimony (AR 284-297)."

These points appear to be accurate based on the cited pages of the record.  Plaintiff cannot introduce new impairments into the proceedings on remand.

### b. Dr. Arvizo's QME

On March 25, 2022, Dr. Arvizo conducted a Panel Qualified Medical Evaluation In Psychology (QME) in connection with Plaintiff's Workers Compensation claim.  AR 125–180. Plaintiff contends these records are relevant and there's a reasonable possibility/probability that they could have changed the outcome if the ALJ had the opportunity to consider them.

Defendant argues the QME would not have changed the ALJ's decision because the evaluation was done under Workers Compensation standards (which focus primarily on the ability to do past work) rather than Social Security disability rules and regulations, which focus also on the ability to perform other, less demanding work  Resp. at 9.

Defendant's argument is not persuasive. First, an ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1103 (C.D. Cal. 2002). Rather, the ALJ must evaluate workers' compensation opinions just as he or she would evaluate any other medical opinion and must "translate" workers' compensation terminology into Social Security terminology to accurately assess the implications of those opinions for the Social Security disability determination. Id.; Soria v. Berryhill, 2019 WL 2448435, at *11 (E.D. Cal. June 12, 2019).

Defendant concedes that both SSA and Workers Compensation standards consider the claimant's ability to perform past work. The fact that SSA regulations <u>also</u> consider the claimant's ability to perform other less demanding work does not justify disregarding the issue common to both standards (ability to perform past work).

Further, insofar as the Workers Compensation analysis as to the ability to perform past work would support the existence of limitations not reflected in the RFC, the ALJ would need to incorporate them into the RFC which, in turn, would impact the step five consideration of the claimant's ability to perform other work in the national economy. Thus, it could reasonably be expected[3] to change the outcome.

Defendant further contends that Dr. Avizo's QME "does not specifically set forth any functional limitations and merely found her temporarily disabled from performing her previous job (AR 140)." To the contrary, the QME contains evidence relevant to Plaintiff's functionality. For example, Plaintiff cites an objective mental status exam contained therein (AR 133). There are almost assuredly more records involved here concerning functional limitations. The Court,

---

[3] The regulations use the phrase "reasonable <u>probability</u>," [20 C.F.R. § 416.1470] whereas the Ninth Circuit uses the phrase "reasonable <u>possibility</u>," [Mayes, 276 F.3d at 462] which have somewhat different connotations. Rather than picking one over the other, it may be simpler to state "could reasonably be expected."

10

however, has no obligation to comb the 62 page QME for additional examples to rebut Defendant's broad-sweeping contention given it does not appear that Defendant did so.

Defendant also contends the QME is irrelevant because it "opined on the ultimate issue of disability and contained opinions on matters reserved to the Commissioner" and because they "encroached" upon the Commissioner's authority to make that determination. Again, this is not persuasive to the extent it seeks to invalidate the entire 62-page QME simply because it addresses some issues that are neither relevant to, nor dispositive of, the SSDI claim.

Finally, Defendant contends:

> Additionally, the mental status exam that Dr. Arvizo performed would not reasonably impact the ALJ's determination because it was relatively consistent with the evidence already in the record including the Mini Mental Status Exam (MMSE) score of 24 obtained by Dr. Arvizo, which is actually the average score of the two MMSEs the ALJ already considered (AR 132). Resp. at 9.

The relative consistency between the two overall MSE scores is not nearly as relevant as Dr. Arvizo's specific examination finding that Plaintiff's "immediate, recent, and remote memory were poor." AR 133. It is important to remember that Plaintiff's memory problems are the primary issue in this case.

In sum, Defendant's contention that a 62-page Workers Compensation QME has <u>zero</u> applicability to a social security disability claim is simply not accurate. This is particularly true considering the QME was specifically a <u>psychological</u> QME, and Plaintiff's social security claim primarily deals with that subject matter. The QME should be considered by the ALJ on remand.

### c.   **Dr. Bhatia**

The next set of records in question is a May 9, 2023 Medical Source Statement (MSS) from neurologist Dr. Bhatia. AR 10–13. Dr. Bhatia had treated Plaintiff since December 28, 2020. Dr. Bhatia diagnosed dementia and indicated the prognosis was poor. AR 10. Dr. Bhatia opined the limitations addressed in the MSS applied as of May 27, 2021. The MSS form addressed 20 work

related mental capacities, and asked the provider to assess the severity of the limitation on a scale ranging from Category I (does not preclude performance of any aspect of the job [duty]) to Category IV (precludes performance for 15% or more of an 8-hour workday). Dr. Bhatia checked Category IV for all 20 abilities. Dr. Bhatia's justification for the limitations was Plaintiff's moderate dementia. He also cited a mini-mental status exam (MMSE) score of 21.

Defendant contends the MMSE is duplicative of others MMSEs in the record which also reflected a score of 21, and which the ALJ already considered. Defendant also contends that the ALJ already rejected Dr. Cruz's opinion on the same check-box form which similarly identified work-preclusive limitations and thus Dr. Bhatia's opinion was unpersuasive for the same reasons.

However, this argument assumes that the ALJ articulated valid reasons for rejecting Dr. Cruz's opinion which, as explained above, the ALJ did not. Further, irrespective of whether the opinions are duplicative in content, the ALJ rejected Dr. Cruz's opinion in part because he was not a specialist, whereas Dr. Bhatia was a specialist (neurology). Dr. Bhatia's opinion should be considered on remand. (AR 10–13).

### d.     Valley Metabolic Imaging; Neuro-Pain Center

The records from VMI cover January 14, 2021 to June 17, 2021 including, among other things, a "PET Brain Imaging Metabolic Evaluation." The medical records from the Neuro-Pain clinic are dated December 28, 2020 through April 12, 2022. Plaintiff does not discuss this evidence when addressing the Appeals Council's errors. Thus, there is no basis to consider them on remand.

### e.     California Neurological Center; Dr. Abbas Mehdi

The records from California Neurological center are dated March 5, 2023 through May 2, 2023. The Appeals Council explained that the ALJ decided the case through January 9, 2023, and thus these records do not relate to the period at issue. AR 2.

Plaintiff explains that the former includes records from Dr. Abbas Mehdi dated May 2,

2023, when Dr. Mehdi evaluated Plaintiff confusion, short-term memory loss, and starring episodes. AR 36. Plaintiff described her symptoms, included episodes of starring and absent-mindedness. Dr. Mehdi assessed Ms. Vega with memory loss, depression, and anxiety. (AR 37).

Defendant contends these records "unequivocally" occurred four months after the relevant period. That is true and is not disputed. Rather, Plaintiff discusses the issue of "relation back," and cites extensive, though not authoritative, caselaw regarding the same. MSJ at 14 (collecting cases). Defendant's response is that Dr. Mehdi's exam was "specific to Plaintiff's performance on that day." Resp. at 10. This is not a convincing argument as Dr. Medhi's exam was a continuation of extensive workup for memory loss and dementia. There doesn't appear to be a logical reason why Dr. Mehdi's exam would have implications specifically limited to Plaintiff's performance on that single day only and not beyond.

Defendant further argues that "there was no indication that Dr. Medhi assessed specific functional limitations that related back." Id. That is true. But it was not a medical opinion, it was an examination. Clinical examinations address things like history of present illness, vitals, objective findings, diagnoses, treatment plans, and the like. They generally don't contain opinions about work-related functional limitations.

Finally, Defendant explains that Dr. Abbas [Mehdi] only began seeing Plaintiff in March of 2023 based on a referral for a second opinion. Again, it's not clear why the episodic/one-time nature of this exam renders it irrelevant. These records should be considered on remand.

### f. Dr. Curry

Dr. Curry's records are dated March 7, 2023 through April 21, 2023. The Appeals Council explained that the ALJ decided the case through January 9, 2023, and these records thus do not relate to the period at issue. AR 2. Plaintiff does not address these records, so there is no basis for them to be considered on remand.

## VI. Conclusion

The ALJ's MRFC was not supported by substantial evidence, nor was the ALJ's rejection of Dr. Cruz's opinion.

Further, most of the records post-dating the ALJ's decision constitute new and material evidence because this evidence bears "directly and substantially on the matter in dispute," relates to the period on or before the date of the hearing decision, and there is a reasonable possibility/probability that the new evidence would have changed the outcome.

Specifically, all records rejected by the Appeals Council should be addressed on remand, except for: **1-** Records from Dr. Singh concerning Plaintiff's back impairment (dated June 24, 2022 through January 11, 2023); **2-** records from Pro-PT dated September 27, 2022 through November 21, 2022 which also address Plaintiff's back impairment; **3-** The records from Valley Metabolic Imaging covering January 14, 2021 to June 17, 2021; and, **4-** The medical records from the Neuro-Pain Medical Center dated December 28, 2020 through April 12, 2022;

## VII. Findings

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Remand is warranted for the ALJ to conduct further proceedings consistent with these Findings and Recommendations

## VIII. Recommendations

For the reasons stated above, it is recommended that:

1. Plaintiff's motion for summary judgment (Doc. 17) be **GRANTED.**
2. Defendant's cross-motion (Doc. 20) be **DENIED.**
3. The matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Findings and Recommendations.

4. That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

### IX. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case per 28 U.S.C. § 636(b)(l). Within 14 days of these Findings and Recommendations, any party may file written objections. The document should be titled "Objections to Magistrate Judge's Findings and Recommendations." The failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **June 22, 2025**   **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE

15